UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Gildardo F.M.,

    Petitioner,

v.

 Todd Blanche, et al.,

    Respondents.

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Civil File No. 26-02494
(MJD/EMB)

---

Jason L. Schellack, Autism Advocacy & Law Center, LLC, Counsel for Petitioner.

David W. Fuller, Worthington Phillips, Assistant United States Attorneys, Counsel for Federal Respondents.

---

This matter is before the Court on Petitioner Gildardo F.M.'s Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner claims he is currently unlawfully detained in violation of the Immigration and Nationality Act ("INA"), the Fifth Amendment's Due Process Clause, and the Administrative Procedure Act ("APA"). Respondents challenge Petitioner's arguments, maintaining that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is not entitled to a bond hearing.

## I.    FACTS[1]

Petitioner is a citizen of Mexico and resides in Ellsworth, Wisconsin. (Doc. 1 ¶ 7.) Petitioner has lived in the United States since on or around December 12, 2022. (Id. ¶ 16.) Petitioner lives with his two minor children, who are both United States citizens. (Id. ¶ 18.) Petitioner's elderly parents also live with him, and he provides care for them. (Id.)  Petitioner is heavily involved in his local community soccer league and volunteers at his children's local school. (Id.)

Prior to his current detention, Petitioner had no contact with immigration enforcement offices and was not known to ICE. (Id. ¶ 20.)

On March 26, 2026, Petitioner was arrested for various driving infractions by local law enforcement in Wisconsin. (Doc. 5 at 2.) Petitioner was specifically arrested for operating his vehicle under the influence, operating his vehicle with a revoked license, and tampering with an ignition interlock device. (Id.; Doc. 6-2.)

On April 29, 2026, Respondents were notified that Petitioner was set to be released. (Doc. 6-2.) Respondents then arrested Petitioner in Ellsworth, Wisconsin when he was released from the local courthouse. (Doc. 1 ¶ 19; Doc. 5 at 2.) Petitioner cooperated with the arrest and did not flee. (Doc. 1 ¶ 20.) At some

---

[1] Facts not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

2

point, Petitioner was transferred to the Sherburne County Jail in Elk River, Minnesota, where he remains detained. (Id. ¶ 7.)

Petitioner asserts that since he entered ICE custody, he has not received any documentation pursuant to his arrest, including a judicial warrant, an I-200, or a Notice to Appear ("NTA"). (Id. ¶ 21.) On the other hand, Respondents assert that Petitioner was served an I-200 and an NTA, both of which were issued and served on April 29, 2026. (Doc. 5 at 2.) To support their position, Respondents file copies of the I-200 and NTA, as well as a copy of Petitioner's I-213, Record of Deportable/Inadmissible Alien. (See Docs. 6-1, 6-2. 6-3.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on May 5, 2026. (Doc. 1.) The Court issued an Order to Show Cause on May 6, 2026, requiring Respondents to respond to Petitioner's petition and certify the "true cause and proper duration of Petitioner's confinement." (Doc. 3.) On May 12, 2026, Respondents responded to the Petition, and on May 18, 2025, Petitioner replied. (See Docs. 5, 7.)

## II.   DISCUSSION

Petitioner argues that his detention is unlawful on the following grounds: 1) as a violation of Petitioner's Fifth Amendment Due Process Rights, 2) as a

3

violation of the Petitioner's Fourth Amendment rights based on Petitioner's warrantless arrest, 3) as a violation of the APA, and 4) as a violation of the Accardi doctrine. (Doc. 1 ¶¶ 55–83.)

## A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  District courts have jurisdiction to hear habeas challenges to immigration-related detention.  Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted).  This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."  Id.  The petitioner bears the burden to prove illegal detention by a preponderance of the evidence.  See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

4

### B. Effect of <u>Avila v. Bondi</u> on Petitioner's Claims

Petitioner acknowledges that he raises claims that are not foreclosed by the Eighth Circuit's decision in <u>Avila v. Bondi</u> 170 F.4th 1128 (8th Cir. 2026), while preserving the claim that Petitioner is not lawfully detained pursuant to 8 U.S.C. § 1225 "should <u>Avila</u> be reversed in the future." (Doc. 1 ¶ 29.) Respondents argue that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2), as confirmed by the Eighth Circuit in <u>Avila</u>. (Doc. 5 at 3–5.)

The Court agrees that the Eighth Circuit's decision in <u>Avila</u> precludes Petitioner's statutory claim on § 1225. <u>Avila</u>, however, does not foreclose constitutional or statutory claims not raised in <u>Avila</u>. The Court therefore turns to Petitioner's other arguments.

### C. Fifth Amendment Due Process

Petitioner applies the <u>Mathews v. Eldridge</u> balancing test to argue that his continued detention violates his constitutional due process rights guaranteed by the Fifth Amendment. (Doc. 1 ¶¶ 55–63 (citing <u>Matthews</u>, citation..) Respondents first argue that Petitioner incorrectly frames his claim as a procedural due process claim when it is really a substantive due process claim. (Doc. 5 at 5–8.) Respondents then argue that even if the Court were to apply the

Mathews v. Eldrige balancing test, Petitioner would "still not be entitled to additional process." (Id. at 9–11.)

### 1. Petitioner's Fifth Amendment Protections

First, the Court feels it necessary to acknowledge both that Petitioner is entitled to due process of law under the Fifth Amendment. The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.  The United States Supreme Court has made clear that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; see also Trump v. J. G. G., 604 U.S. 670, 673 (2025) (holding that "'[i]t is well established that the Fifth Amendment entitles aliens to due process of law'" in the context of removal proceedings) (quoting Reno v. Flores, 507 U.S. 292, 306, (1993)). Therefore, Petitioner is protected by the constitutional protections contained within Fifth Amendment.

6

### 2. Procedural vs. Substantive Due Process

Respondents first argue that Petitioner incorrectly marks his claim as a procedural due process claim, when instead, he proffers a substantive due process claim because he "argues that the determination that Petitioner is an applicant for admission . . . is a constitutionally insufficient basis on which to justify the deprivation of liberty." (Doc. 5 at 7.) The Court acknowledges that Petitioner's due process claims do invoke the statutory provisions requiring detention under 8 U.S.C. § 1225(b)(2). However, Petitioner "undoubtably also argues that [his] detention without bond deprived [him] of [his] liberty without due process of law." United States. Lopez-Campos v. Raycraft, No. 25-1965, 2026 WL 1283891, at *12 (6th Cir. May 11, 2026). Because procedural due process challenges specifically address the "adequacy of the procedures" used to deprive someone of their liberty, the Court will consider Petitioner's procedural due process challenge as properly raised. Mathews, 424 U.S. at 335.

### 3.  <u>Mathews v. Eldridge</u> Balancing Test

Turning to the merits of Petitioner's procedural due process claim[2], to determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1], the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Mathews</u>, 424 U.S. at 321.

Respondents claim that the first factor, Petitioner's private interest, is "significant in the abstract, [but] is limited by the detention posture Congress assigned to applicants for admission." (Doc. 5 at 9 (citing <u>DHS v. Thuraissigiam</u>, 591 U.S. 103 (2020).) The Court disagrees that <u>Thuraissigiam</u> limits Petitioner's private interest. In <u>Thuraissigiam</u>, a noncitizen was detained immediately after entering the country at the southern border. 591 U.S. at 114. He was detained for expedited removal pursuant to 8 U.S.C. § 1225. <u>Id.</u> The Supreme Court

---

[2] Respondents do not argue that the Eighth Circuit's decision in <u>Banyee v. Garland</u>, 115 F.4th 928 (8th Cir. 2024) precludes Petitioner's procedural due process argument. Still, such argument has already been considered and rejected by this Court. <u>See e.g.</u>, <u>Orlando R.V.V. v. Blanche</u>, Civ. No. 26-1903, slip op. (D. Minn. Apr. 28, 2026).

determined that the petitioner was not entitled to a bond hearing because a noncitizen in his position "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 140.

However, Thuraissigiam is easily distinguishable on the facts. The petitioner in Thuraissigiam "was apprehended 25 yards from the border and was thereafter continuously detained." Manuel G. v. Blanche, No. 26-cv-2385, 2026 WL 1256358, at *4 (D. Minn. May 7, 2026). The Court is persuaded by the Sixth Circuit's recent decision in Lopez-Campos, where the Court determined that the factual predicate for Thuraissigiam "merely reinforces our longstanding understanding that noncitizens 'on the threshold of initial entry stand[] on a different footing' than those who have 'passed through our gates.'" 2026 WL 1283891, at *12 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)). Because Petitioner here has been living in the United States for several years without detection, the Court finds that the holding in Thuraissigiam does not limit his private interest under the Mathews balancing test.

Instead, the Court finds that the first factor weighs heavily in Petitioner's favor. The Supreme Court has referred to the interest in being free from physical

detention the "most elemental of liberty interests." See Hamdi v. Rumsfield, 542

U.S. 507, 529 (2004); see also Zadvydas, 533 U.S. at 690 ("Freedom from

imprisonment—from government custody, detention, or other forms of physical

restraint—lies at the heart of the liberty that [the Fifth Amendment's Due

Process] Clause protects."). Petitioner is currently detained in Sherburne County

Jail, where he has been for almost a month in circumstances that very likely

mirror "criminal incarceration." See Gunaydin v. Trump, 784 F. Supp. 3d 1175,

1187 (D. Minn. 2025) ("[w]hen assessing [the first factor], courts consider the

conditions under which detainees are currently held, including whether a

detainee is held in conditions indistinguishable from criminal incarceration."

(citing Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021); Velasco Lopez v.

Decker, 978 F.3d 842, 851 (2d Cir. 2020)). By his continued detention, Petitioner is

also undoubtedly experiencing the deprivations of incarceration, like the loss of

companionship and income. Therefore, considering Petitioner demonstrates

significant private interests affected by his ongoing detention, the first Mathews

factor favors Petitioner.

The second Mathews factor requires to the Court to consider the risk of an

erroneous deprivation of Petitioner's liberty as well as consider "the degree to

10

which additional or substitute procedural safeguards could ameliorate the risks

of erroneous deprivation." <u>Selvin Adonay E.M. v. Noem</u>, 817 F. Supp. 3d 750, 734

(D. Minn. 2025) (citing <u>Mathews</u>, 424 U.S. at 335). The Court agrees with the

decision in <u>Rodriguez Brizuela v. Noem</u>, where the court stated that "a

substantial risk of erroneous deprivation of liberty exists" for "a noncitizen who

was arrested within the United States and lacks any prior release by immigration

authorities, but who has established a life here in the United States" when he is

detained without bond.  No. 5:26-CV-0279-JKP, 2026 WL 752257, at *6 (W.D. Tex.

Mar. 12, 2026) (citation omitted).

Further, as the court in <u>Jesus Alejandro G. A v. Blanche</u> noted, detention

during removal proceedings is "'constitutionally permissible'" but "the

government's authority to detain noncitizens is not limitless" and "should

advance two regulatory goals: (1) ensuring the appearance of noncitizens at their

immigration proceedings; and (2) preventing danger to the community while

those proceedings are ongoing." No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138,

at *11 (D. Minn. May 18, 2026) (first citing <u>Demore v. Kim,</u> 538 U.S. 510, 513

(2003), then citing <u>Zadvydas</u>, 533 U.S. at 690). An individual bond hearing, where

both parties have an opportunity to be heard, would allow an Immigration Judge

11

to determine whether Petitioner's detention is, in fact, necessary to ensure Petitioner will be present at his future immigration proceedings as well as not pose any danger to his community.

The third Mathews factor requires the Court to consider the government's interest "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. Respondents argue that "Congress has a strong interest in the uniform administration of the immigration laws, in ensuring the availability of applicants for admission during removal proceedings, and in avoiding the administrative burdens of grafting onto § 1225 a bond hearing regime Congress did not create." (Doc. 5 at 10.) As stated above, the Court acknowledges that the government has a substantial interest in protecting the public – perhaps even more so here, where Petitioner was detained originally after his arrests for serious driving offenses – however, such "interest[] [is] not subverted by requiring the minimal procedural safeguard of a bond hearing." Manuel G. v. Blanche, No. 26-CV-2385 (SRN/ECW), 2026 WL 1256358, at *5 (D. Minn. May 7, 2026).

12

Instead, granting Petitioner a bond hearing – which is hardly an "administrative burden"– will give both parties an opportunity to adequately present arguments on the dangerousness and flight risks posed by Petitioner's specific circumstances. This due process safeguard will then necessarily "reduce the risk of erroneous deprivation without imposing significant burdens on the Government." Selvin, 817 F. Supp. 3d at 734.

The above analysis leaves the Court with but one possible conclusion: the factors all weigh in Petitioner's favor. For these reasons, the Court concludes that mandatory detention pursuant to § 1225(b)(2), as applied to Petitioner in this case, violates his constitutional right to procedural due process. The appropriate remedy for such constitutional deprivation is to provide him with an opportunity to be heard. In this case, that means a bond hearing.

The Court acknowledges that the parties here spend considerable briefing on Petitioner's initial arrest, arguing about the sufficiency of the warrant as well as the Respondents' compliance with the INA's warrantless arrest statute and the Fourth Amendment. However, because the Court finds that Petitioner's current detention without a bond hearing violates his Fifth Amendment due process protections, the Court need not consider Petitioner's alternative arguments. See

13

<u>Faysal N. v. Noem</u>, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at *3 n.3 (D. Minn. Jan. 6, 2026) (stating that when the court's decision on one of the petitioner's asserted theories for relief meant that the petitioner's detention was unlawful, the court did not need to reach the petitioner's alternative arguments).

## III.   ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.   The Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED IN PART** as follows:

   a.  Petitioner's detention under 1225(b)(2) violates his due process rights.

   b.  Respondents are ordered to provide Petitioner with a bond hearing within one week after the issuance of this Order;

   c.  Respondents are ordered to file notice of such bond hearing directly with the Court within two (2) hours of its scheduling[3]; and

   d.  If a bond hearing takes place that results in Petitioner's release, Respondents are ordered to:

---

[3] The purpose of this is to provide timely notice to Petitioner's counsel so that counsel can prepare for the bond hearing and/or find an immigration law attorney to represent Petitioner at the hearing.

14

    i.  Release Petitioner into Minnesota;

    ii.  At a safe time and place communicated at least two (2) hours in advance to Petitioner's counsel; and

    iii.  With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys;

e.  If a bond hearing does not take place within one week, the Respondents are ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in 2(c); and

2.  Within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody, Respondents must file a status report with the Court detailing the results of the Bond Hearing or its actions related to release; and

3.  Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 26, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court

15